Filed 7/19/24  P. v. Thompson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C095953 |
| Plaintiff, | (Super. Ct. No. 21HB5097) |
| v. | |
| TERRY MICHAEL THOMPSON, | |
| Defendant and Respondent; | |
| STATE DEPARTMENT OF STATE HOSPITALS, | |
| Objector and Appellant. | |

The State Department of State Hospitals (DSH) appeals an order sanctioning it over $80,000 for failing to admit Terry Michael Thompson, a criminal defendant found incompetent to stand trial, by a court-imposed deadline.  DSH and Thompson agree this case is virtually identical to our recent decision in *People v. Edwards* (2023) 88 Cal.App.5th 1259 (*Edwards*), and we agree as well.  DSH argues that, for the same

reasons we did so in *Edwards*, we should reverse and remand this case to the trial court to provide additional details about the conduct or circumstances justifying sanctions, and to make additional findings regarding the amount of sanctions. We agree.

## BACKGROUND

We begin with a brief discussion of *Edwards*, and then discuss the facts of this case.

*Edwards* involved three separate cases that were consolidated on appeal. (*Edwards, supra*, 88 Cal.App.5th at p. 1262.) In each case, the trial court found a criminal defendant was incompetent to stand trial and ordered that he or she be admitted to DSH for treatment.[1] When DSH failed to admit the defendants in a timely manner, the trial court issued an order to show cause why sanctions should not be imposed and directed DSH to admit each defendant by a particular date. When the defendants were not admitted by that date, the trial court imposed sanctions of $1,000 for each day past the deadline, for a total of $91,000. (*Edwards*, at pp. 1264-1266.) DSH appealed all three sanctions orders, arguing they failed to comply with Code of Civil Procedure section 177.5,[2] which provides: "A judicial officer shall have the power to impose reasonable money sanctions, *not to exceed fifteen hundred dollars ($1,500)*, . . . for any violation of a lawful court order by a person, done without good cause or substantial justification. . . . [¶] . . . *An order imposing sanctions shall be in writing and shall recite in detail the conduct or circumstances justifying the order*." (Italics added.) DSH argued (1) the trial court's written orders did not recite in sufficient detail the conduct or

_____

[1] *Edwards* contained a lengthy discussion of the statutory scheme governing defendants who have been found incompetent to stand trial, and we do not repeat that discussion here. (See *Edwards, supra*, 88 Cal.App.5th at pp. 1263-1264, 1268-1269.)

[2] Undesignated statutory references are to the Code of Civil Procedure.

circumstances justifying sanctions, and (2) section 177.5 limited sanctions to $1,500 and did not authorize the trial court to get around this cap by imposing daily sanctions. (*Edwards*, at p. 1266.)  We held that in two of the three cases, the written orders failed to recite in sufficient detail the conduct justifying sanctions, as required by section 177.5, and we remanded those two cases to the trial court to either provide sufficient detail or vacate its award of sanctions.  (*Edwards*, at pp. 1270-1274.)  We also held section 177.5 authorized a court to impose sanctions up to the statutory maximum of $1,500 for separate violations of a lawful court order, and we remanded all three cases to the trial court "to determine in the first instance whether DSH committed separate acts of violating a court order on each day that it failed to admit the defendants past the court-ordered deadline, or whether its failure to admit the defendants can only be considered one act of violating a court order."  (*Edwards*, at p. 1279; see *id*. at pp. 1275-1279.)

The notice of appeal in this case was filed on March 29, 2022, just a few weeks after we consolidated the three cases in *Edwards*.  We note that, according to Thompson, this case "was essentially the last of a series of four cases" decided around the same time. We also note all four cases were decided by the same trial court judge on the same grounds.  On August 22, 2022, we stayed this case pending resolution of *Edwards*.  Our decision in *Edwards* was issued on March 7, 2023, remittiturs were issued on May 9, 2023, and on June 6, 2023, we vacated the stay in this case and it was fully briefed on May 7, 2024.  The underlying facts are as follows.

Thompson was found incompetent to stand trial on May 26, 2021, and on June 17, 2021, the trial court ordered that he be admitted by DSH for treatment.  We do not have a copy of the actual admission order, but at a hearing held on June 17, 2021, the trial court stated it would order DSH to admit Thompson within 60 days of receiving his admission packet.  DSH received that packet on June 21, 2021, which means Thompson had to be admitted by August 20, 2021, in order to comply with the trial court's deadline.

3

On July 22, 2021, Thompson filed a petition for writ of habeas corpus seeking immediate admission to DSH. On July 26, 2021, the trial court issued an order to show cause that noted Penal Code section 1370, subdivision (b) provides "within 90 days" of a court order committing a defendant to DSH, "the medical director . . . shall make a written report to the court . . . concerning the defendant's progress toward recovery of mental competence," and in order to comply with this 90-day reporting requirement, the defendant had to be admitted to DSH in sufficient time to be evaluated and begin treatment.

On August 4, 2021, DSH filed a response to the order to show cause. It argued that due to the state of emergency declared as a result of COVID-19, it was unable to immediately admit Thompson. It also stated Thompson was currently number 10 on the waitlist for the Shasta County Jail Based Competency Treatment (JBCT) program, and it estimated he would be admitted around September 13, 2021. The response was accompanied by a declaration from Melanie Scott, the acting deputy director of hospital strategic planning and implementation for DSH, who detailed steps DSH had taken to stop the spread of COVID-19 in its facilities, and steps it had taken since 2017 to increase the availability of treatment for defendants found incompetent to stand trial.[3]

At a hearing held on August 11, 2021, counsel for DSH stated the waitlist was moving faster than previously anticipated, and it now estimated Thompson would be admitted before September 13, 2021. The trial court ordered DSH to admit Thompson no later than August 20, 2021, and it stated, "after that date I'll impose sanctions of $1,000 per day against" DSH.

---

[3] Scott filed a similar declaration in each of the three cases in *Edwards*. (See *Edwards, supra*, 88 Cal.App.5th at p. 1265.)

On August 16, 2021, the court issued a written order that stated DSH "shall" admit Thompson by August 20, 2021, and reiterated "sanctions of $1,000.00 per day" would be imposed if he was not admitted by that date.

At a hearing held August 25, 2021, counsel for DSH stated Thompson was now number four on the waitlist for the JBCT program and DSH was "working as fast and as diligently" as it could to admit him. Counsel also stated DSH's efforts to mitigate the spread of COVID-19 had "slowed things down" and caused "delays." The court noted the "Board of Prison Terms and Rehabilitation" was letting people out of state prisons in an effort to stop the spread of COVID-19, and "as a result, I am seeing that the prisons are starting to winnow out a lot of the inmates. There are certainly locations that [DSH] could encourage the government to start allowing for the folks here that need the locations. They need the housing in [DSH]." It then stated: "[I]t's just painful to see the number of days we have litigants here. For the last two and a half, three years, we have people that are waiting for entry into [DSH] for six to eight to nine months to a year. We have seen outrageous violations of their rights to speedy trial."

Thompson was admitted to the JBCT program on November 12, 2021, and he was restored to competency on November 17, 2021.

On November 29, 2021, the court issued a written order noting Thompson had been admitted to the JBCT program on November 12, 2021, and stating, "Given the fact that [Thompson] remained in custody untreated for several months, this matter is placed on calendar Tuesday, December 21, 2021 . . . to remedy the unfortunate events mentioned above."

At the hearing on December 21, 2021, counsel for DSH stated it was trying to admit defendants found incompetent to stand trial in a timely manner, but "the COVID pandemic has done nothing to help ease our wait list issues and has, in fact, exacerbated them as we still have at all of our facilities . . . varying degrees of units that remain under quarantine which changes on a weekly basis." The trial court responded: "I am

5

empathetic to the people that actually work for [DSH] because of the incredible load that has come your way over the last four years since . . . the Governor has chosen, on his own accord, not to invest in mental health facilities in lieu of prisons.  So, if he's going to be shutting down prisons, he ought to be putting money in mental health facilities so that we could move things along a lot more quickly and people's rights would not be violated."  At the conclusion of the hearing, the court stated it was taking "the amount of sanctions" under submission.

On February 25, 2022, the court issued a written order that stated, in full:

> "On August 16, 2021, this court issued sanctions orders to [DSH] for its failure to receive the defendant Terry Thompson for competency training.  Although [DSH] did not receive the defendant by August 20, 2021, he was received to the Shasta Jail Based Competency program.  Therefore, the court shall not impose sanctions from June 21, 2021 to August 20, 2021 as the August 16th order had indicated.[4]

> "However, given the extended period of time the defendant was pending commitment, the court ORDERS sanctions of $1000 per day to be paid to the Shasta County Court by the DSH from the period of August 21, 2021 and November 12, 2021, the date the defendant was finally received by the DSH.

> "[DSH] is ORDERED to pay the Shasta County Superior Court the sum of $1000 per day from the period of August 21, 2021 until the date the defendant was finally accepted into the DSH, pursuant to Code of Civil Procedure section 177.5 and *People v. Aguirre* (2021) 64 Cal.App.5th 652.  **This is a total sanctions order of $83,000.**"

This appeal followed.

---

**4**　　It is unclear what this last sentence means.  None of the court's orders suggested sanctions would be imposed for the period between June 21 and August 20, 2021.

6

**DISCUSSION**

DSH argues the sanctions order should be reversed and remanded for further proceedings on two separate grounds: (1) it fails to recite in sufficient details the conduct or circumstances justifying sanctions, as required by section 177.5; and (2) it fails to make findings justifying sanctions exceeding section 177.5's $1,500 cap. We agree. As we stated in *Edwards*, although we generally review an order imposing sanctions for abuse of discretion, we review questions of law, including the proper interpretation of section 177.5, de novo. (*Edwards, supra*, 88 Cal.App.5th at pp. 1266-1267.)

1.      **Section 177.5's "Recite in Detail" Requirement**

As we stated in *Edwards*: "Section 177.5 provides an order imposing sanctions must satisfy two requirements: (1) it must be in writing; and (2) it must 'recite in detail the conduct or circumstances justifying the order.' (§ 177.5.) . . . [¶] The purpose of the specificity requirement of section 177.5 ' "is to fulfill the 'rudiments' of due process required for governmental imposition of a penalty . . . —both for due process' own, constitutional sake and to ensure that the power conferred by the statute will not be abused. [Citations.] Moreover, in some cases the court's recitation will be an invaluable aid to a reviewing court determining whether the trial court abused its discretion in awarding sanctions. [Citation.]" ' [Citation.] In order to comply with the specificity requirement, the ' "court's written order 'should be more informative than a mere recitation of the words of the statute.' " ' [Citation.] It must do more than merely state ' "good cause appearing." ' [Citation.] It ' "must state the specific circumstances giving rise to the [sanction], and state with particularity the basis for finding those circumstances amount to" ' violation of a lawful order without good cause or substantial justification. [Citation.] The requirement for a detailed recitation 'may be satisfied by incorporating by reference "papers setting forth the conduct, circumstances, and legal arguments underlying the court's conclusions." ' [Citation.] Because section 177.5 requires the order to be in writing, 'A trial judge's on-the-record oral recitation of reasons for

7

imposing sanctions is insufficient.' [Citations.]" (*Edwards, supra*, 88 Cal.App.5th at pp. 1270-1271.)

DSH argues the trial court's order in this case fails to meet the specificity requirement as outlined in *Edwards*. We agree. The order says almost nothing beyond the fact that DSH was sanctioned $1,000 for each day past August 20, 2021, that it failed to admit Thompson. It contains no finding to the effect that DSH lacked good cause or substantial justification for failing to admit Thompson by August 20, 2021, much less details supporting such a finding. It thus fails to comply with section 177.5.

Thompson argues the order is sufficient because it effectively incorporates by reference the discussion in *People v. Aguirre, supra*, 64 Cal.App.5th 652, and in *Edwards* we held one of the orders was sufficient for the same reason.[5] We disagree, because the order in *Edwards* did much more than simply cite *Aguirre*, which is all the order in this case does. (*Edwards, supra*, 88 Cal.App.5th at pp. 1271-1272.) Thompson also argues the order is sufficient because the court made other oral findings on the record identifying the conduct justifying sanctions. Again we disagree, because, as just noted, the " 'trial judge's on-the-record oral recitation of reasons for imposing sanctions is insufficient' " to comply with section 177.5's requirement for a written order. (*Edwards*, at p. 1271.)

As we did in *Edwards*, " 'We remand so that the trial court may either make findings in a manner consistent with the views expressed in this opinion, or in the alternative, vacate its award of [sanctions].' " (*Edwards, supra*, 88 Cal.App.5th at p. 1273.)

---

[5]     As we discussed at length in *Edwards*, *Aguirre* was a decision of this court upholding a trial court's finding that DSH's proffered justifications for failing to admit incompetent to stand trial defendants by a court-ordered deadline were insufficient to excuse its conduct, and thus also upholding its imposition of sanctions against DSH. (*Edwards, supra*, 88 Cal.App.5th at pp. 1268-1269, discussing *People v. Aguirre, supra*, 64 Cal.App.5th 652.)

## 2.    The Amount of Sanctions

The trial court sanctioned DSH a total of $83,000—$1,000 for each day past the court-ordered deadline it failed to admit Thompson.  Section 177.5 provides the court may impose sanctions "not to exceed" $1,500 for violation of a lawful court order.  In *Edwards*, we discussed at length whether section 177.5 imposes a $1,500 cap on sanctions no matter how long it takes to admit a defendant (as DSH argued), or whether it allows sanctions of up to $1,500 for each day DSH violated a court-ordered admission deadline (as the defendants argued).  (*Edwards, supra*, 88 Cal.App.5th at pp. 1275-1279.)  We ultimately concluded section 177.5 "allow[s] sanctions of up to $1,500 *for each separate violation of a court order*," and we "remand[ed the] case to the trial court to determine in the first instance whether DSH committed separate acts of violating a court order on each day that it failed to admit the defendants past the court-ordered deadline, or whether its failure to admit the defendants can only be considered one act of violating a court order." (*Edwards*, at p. 1279, italics added.)  DSH and Thompson agree we should do the same thing in this case, and we agree as well.[6]  We also reiterate, "If the trial court determines DSH committed separate acts of violating a court order, its written order imposing sanctions 'shall be in writing and shall recite in detail the conduct or circumstances justifying' that determination.  (§ 177.5.)" (*Edwards*, at p. 1279.)

---

[6]    We decline DSH's alternative suggestion that we should decide on our own that its failure to admit Thompson by August 20, 2021, constituted only one violation of the court's order, and that sanctions thus cannot exceed a total of $1,500.

9

# DISPOSITION

The sanctions order is reversed, and this case is remanded to the trial court with directions to make sufficient written findings to support the imposition of sanctions vel non, and, if appropriate, to make findings to support the imposition of daily sanctions or to reduce the award of sanctions accordingly.

/s/_____
EARL, P. J.

We concur:

/s/_____
MAURO, J.

/s/_____
MESIWALA, J.